UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY M. COLLISON,

              Plaintiff,                  CIVIL ACTION NO. 11-11102

          v.                     MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

        *A.    Proceedings in this Court*

On March 16, 2011, Plaintiff filed suit seeking judicial review of the Commissioner's

decision to deny benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), the matter was referred to this Magistrate Judge to review the Commissioner's

decision (Dkt. No. 4). Cross-motions for summary judgment are pending (Dkt. Nos. 13, 15).

Plaintiff also filed a reply brief (Dkt. No 18).

The parties consented to this Magistrate Judge's jurisdiction (Dkt. No 14); on February 8,

2012, Judge Paul D. Borman signed an order authorizing this Magistrate Judge to decide the

pending summary judgment motions and to enter a final judgment (Dkt. No. 19).

        *B.    Administrative Proceedings*

Plaintiff filed his claim for disability and Disability Insurance Benefits on May 29, 2007,

alleging that he became unable to work on February 21, 2006 (Tr. 54). The claim was initially

denied by the Commissioner on September 10, 2007 (Tr. 54). Plaintiff requested a hearing and,

on October 15, 2008, Plaintiff appeared with counsel before Administrative Law Judge (ALJ)

James M. Mitchell, who considered the case *de novo*. In a decision dated March 2, 2009, the

ALJ found that Plaintiff was not disabled (Tr. 51-61). Plaintiff requested a review of this

decision on November 4, 2009 (Tr. 10-11). On December 9, 2010, the ALJ's decision became

the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for

further review (Tr. 7-9).

For the reasons set forth below, the Court finds that the ALJ's decision contains errors of

law. Accordingly, Plaintiff's motion for summary judgment is **GRANTED**, Defendant's motion

for summary judgment is **DENIED** and, pursuant to sentence four of 42 U.S.C. § 405(g), the

decision of the Commissioner is **REMANDED** for a new hearing consistent with the discussion

below.

## II.    STATEMENT OF FACTS

### A.    *ALJ Findings*

Plaintiff was 46 years old on his alleged disability onset date of February 21, 2006 (Tr.

59). Plaintiff has past relevant work history as a salesperson (Tr. 17-19). The ALJ applied the

five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not

engaged in substantial gainful activity since his alleged disability onset date (Tr. 56). At step

two, the ALJ found that Plaintiff had the following "severe" impairments: degenerative disc

disease ("DDD"), obesity, history of chronic deep vein thrombosis, headaches, irritable bowel

syndrome and thrombophlebitis. *Id*. At step three, the ALJ found no evidence that Plaintiff's

impairments or combination of impairments met or medically equaled one of the listings in the

regulations (Tr. 58).

Between steps three and four, the ALJ found that Plaintiff had the following Residual

Functional Capacity (RFC):

> [A]ble to lift, push or pull 10 pounds occasionally and five pounds frequently;
> able to walk, stand, stoop, or bend occasionally; able to sit frequently; unlimited
> in attention, concentration, understanding, and memory; unlimited in vision and
> hearing; with the right, dominant feature, moderately limited in overhead
> reaching, where moderate is defined as able to perform a task for less than three
> hours in an eight-hour workday; unlimited in performing manipulative activities,
> lightly limited in maintaining simple, repetitive and routine tasks; unlimited in
> interacting with the general public; able to work with occasional supervision; and
> limited by slight to moderate pain (Tr. 58).

At step four, the ALJ found that Plaintiff could not perform his previous work (Tr. 59).  At step

five, the ALJ denied Plaintiff benefits, because the ALJ found that Plaintiff could perform a

significant number of jobs available in the national economy, such as order clerk (2,500 jobs in

the State of Michigan), office helper (2,000 jobs in Michigan), telemarketer (5,500 jobs in

Michigan) or small parts assembler (3,000 jobs in Michigan) (Tr. 60).

### B.      Administrative Record

#### 1.      Medical Evidence

As noted earlier, Plaintiff alleged that he became disabled beginning on February 21,

2006 (Tr. 54).  In November 2003, approximately two years before Plaintiff's alleged disability

onset date, Mohamad Hakim, M.D., a general surgeon, performed a laparoscopic

cholecystectomy to relieve Plaintiff's acute cholecystitis (sudden gallbladder inflammation

causing severe abdominal pain) and surgery to repair an umbilical hernia (Tr. 147-52, 160-64).

Dr. Hakim diagnosed Plaintiff with left leg deep vein thrombosis (DVT) and depression in

February 2004, and prescribed Coumadin (used to prevent blood clots) when Plaintiff presented

to an emergency room (Tr. 165-66, 169). During that same hospital admission, Albert

Klemptner, D.O., noted that Plaintiff "will likely require lifelong therapy given his recurrent

DVT" (Tr. 168).

On May 3, 2004, Plaintiff complained to Dr. Hakim of low back pain, and an MRI was

taken of his spine (Tr. 172).  The MRI indicated no disc herniation or spinal stenosis at the L1-L2

level; mild degenerative changes at that level, moderate degenerative changes at the L2-L3 level

without disc protrusion, minimal narrowing of the bilateral foramina exit at that level (Tr. 171);

moderate degenerative changes at the L5-S1 level without disc herniation or spinal stenosis,

marked degree of degenerative changes at the L4-L5 level, and spinal stenosis at the L3-L4 level

(Tr. 172).

In November 2004, a CAT scan revealed Plaintiff had cellulitis (skin

infection/inflammation) of the left leg (Tr. 174), and a duplex scan confirmed DVT (Tr. 175).

Between November 21 to November 29, 2004, Plaintiff underwent a series of surgeries and

medical consultations at Oakwood Hospital (Tr. 185).  Plaintiff had a spinal tap to treat chronic

cephalgia (Tr. 180).  A consultation report during this hospitalization revealed Plaintiff had a

history of chronic thrombophlebitis, pulmonary embolization, acute cellulitis of the left leg that

was moving towards the groin area, headaches and hyperlipidemia (Tr. 176).  It was noted that

Plaintiff had chronic thrombophlebitis of the left lower limb since 1987 and was taking

Coumadin at 5 mg per day since that time (Tr. 177).  The report also stated that Plaintiff had a

blood clot in his lung four years earlier and an inferior vena cava filter was never inserted (Tr.

177).  Plaintiff had also been suffering from chronic back pain and migraine headaches (Tr. 177,

179). As a result of the headaches, Plaintiff underwent an EEG and EKG, which revealed

abnormal findings secondary to low voltage and generalized slowing consistent with general

cerebral dysfunction. (Tr. 182).  The EKG revealed a left ventricular chamber diameter that

bordered on impaired systolic function (Tr. 183). Plaintiff was prescribed Heparin, Effexor, Zoloft, Imitrex, Cefazolin, Solu-Medrol, Prevacid, Librax, and Soma (Tr. 176, 179). When he was discharged from Oakwood, Plaintiff was still suffering from an infection in his left leg, seizure and headaches, hypertension, cellulitis of the leg causing gangrene, psychosexual dysfunction, chronic urinary frequency, hyperlipidemia, peripheral vascular disease, diarrhea, hypopotassemia, and anxiety (Tr. 184-85).

In September 2005, a brain MRI was conducted due to syncope and trauma; the MRI revealed a small venous angioma (benign tumor consisting of small blood vessels) (Tr. 188). Frank Fayz, M.D., opined that the angioma was stable and that Plaintiff had no acute MRI brain process (Tr. 191).

On December 7, 2005, Ashraf Mohamed, M.D., a neurologist and pain specialist, conducted cervical facet joint injections at the C3-C6 levels to treat Plaintiff's cervical radiculopathy (Tr. 137, 140).

On February 22, 2006, Plaintiff complained of headaches, neck pain, and depression; Dr. Mohamed diagnosed depression and prescribed the anti-depressant Lexapro (Tr. 139). One month later, MRI studies revealed malalignment of Plaintiff's cervical spine with mild retrolisthesis of C6 upon C7, moderate DDD at the C6-C7 level, super-imposed broad posterior herniations at the C5-C6 level causing compression of the C6 and C7 nerves, and bulging discs causing moderate left C5 and left C6 foraminal stenosis (Tr. 195); mild DDD at the L3 level and moderate DDD at the L4 level, mild to moderate diffuse lumbar spine degenerative joint disease (DJD), worse at the L4 level, mild to moderate stenosis at L3-L4 level with definite compression of the exiting right L4 nerve root, and mild superimposed left paracentral L3 disc herniation (Tr. 197).

In April 2006, Plaintiff was admitted to the hospital due to an episode of acute thrombophlebitis (vein inflammation caused by a blood clot), DVT, and cellulitis (Tr. 199-200, 202). Dr. Klemptner evaluated Plaintiff, noted his history of recurrent DVT, and reported that "[u]nfortunately [Plaintiff] is very non-compliant and was not taking his Coumadin" (Tr. 200). Plaintiff reported no significant change in his activity level or routine (Tr. 200). Plaintiff continued to complain of difficulty with pain in his left foot (Tr. 200). Upon examination, Plaintiff had full range of motion, no edema, and left leg tenderness (Tr. 200). Plaintiff was diagnosed as having acute DVTs, acid reflux, and bipolar disorder (Tr. 200). Dr. Klemptner prescribed Coumadin and "again advised of the need for compliance" (Tr. 201).

Dr. Mohamed, Plaintiff's neurologist and pain specialist, provided treatment to Plaintiff during the relevant period. Throughout this treatment period, Dr. Mohamed administered occipital nerve block injections to treat Plaintiff's occipital neuralgia (inflammation of the occipital nerves) (Tr. 130, 142), cervical facet joint injections at the C4 to C6 levels to treat Plaintiff's cervical radiculopathy (Tr. 131, 137, 141), and a suprascapular nerve block to treat his suprascapular neuralgia and shoulder pain (Tr. 138) .

In August 2007, Jared Griffith, D.O., examined Plaintiff at the request of the State Agency (Tr. 206-12). Plaintiff told Dr. Griffith that he never had surgery for his irritable bowel syndrome, and that it was under control and was best when he was not at work, due to lower stress levels (Tr. 209). He stated that tedious arm movement exacerbated his neck pain, but the pain did not radiate to his upper extremities (Tr. 208). Dr. Griffith noted that Plaintiff's past medical history "[i]ncludes bipolar disorder" (Tr. 209). Plaintiff had a thrombophlebitis in April 2006, and Dr. Griffith noted that Plaintiff suffered from "longstanding" DVT, and was on long-term Coumadin therapy (Tr. 208). Upon examination, Plaintiff had no edema, no evidence

of varicose veins, no musculoskeletal tenderness, normal neurological findings, full cervical and

lumbar spine motion, no significant paravertebral spasm, negative straight leg raising (SLR)

examination, and no lower extremity swelling (Tr. 210-11).  Dr. Griffith also noted that Plaintiff

did not use an assistive device for ambulation (Tr. 210).

In September 2007, state agency psychological expert Leonard C. Balunas, Ph.D.,

reviewed Plaintiff's file and determined that Plaintiff did not have a medically determinable

mental impairment (Tr. 213-14).  Also, Dr. Norman Blanchard, a state agency disability

examiner, reviewed Plaintiff's file and concluded that Plaintiff could perform medium exertional

work (Tr. 229).  Dr. Blanchard cited Plaintiff's full range of motion in his cervical and lumbar

spinal regions, negative SLR tests, normal gait, and lack of muscle spasms (Tr. 229).  However,

Dr. Blanchard also found Plaintiff's complaints regarding the severity of his symptoms credible

(Tr. 233).  In particular, Dr. Blanchard noted:

> [Plaintiff] states that he experience[s] headaches since 4 1/2 yrs. Real bad pain lies
> above left eye and in the temple. Unable to do thins [sic] around the house within
> 5 to 10 minutes because he is in extreme pain. When he attempts to go to the
> store, within 10 minutes of walking [he has] to stop and rest. Different activities
> seem to bring on the pain. Difficulty lifting, squatting, bending, standing,
> reaching, walking, sitting, kneeling and climbing stairs. [Plaintiff] is credible (Tr.
> 233).

Thus, although Dr. Blanchard found that Plaintiff could perform "medium" work, he also seemed

to fully credit Plaintiff's allegations of disabling pain.

### 2.    Vocational Expert

At the administrative hearing, a Vocational Expert ("VE") testified that Plaintiff's past

jobs of cashier, furniture salesman, and flooring salesman were "light" jobs (Tr. 42). The ALJ

asked the VE to consider an individual who possessed Plaintiff's vocational factors and could

lift/push/pull 20 pounds occasionally and 10 pounds frequently; walk/stand frequently; and sit,

stoop, or bend occasionally (Tr. 43). In response, the VE testified that the individual could not

perform Plaintiff's past jobs, but could perform other light jobs that were unskilled (Tr. 43).

In a subsequent hypothetical question, the ALJ asked the VE to consider that the

individual was limited to "sedentary" exertional work in that he could lift/push/pull 10 pounds

occasionally and 5 pounds frequently; walk/stand/stoop/bend occasionally; and sit frequently

(Tr. 45). The VE testified that Plaintiff's former light jobs would be eliminated, but the

individual could perform the sedentary occupations of order clerk, telemarketer, office helper or

small parts assembler (Tr. 45). The VE testified that these jobs remain suitable if the

following nonexertional limitations were added: slightly limited in overhead reaching with right

dominant upper extremity (slightly being 6 hours or less per shift or moderately limited in

overhead reaching being 3 hours or less per shift); slightly limited in the ability to do simple,

repetitive tasks; occasional supervision; and slight to moderate pain or moderate to severe pain

requiring frequent medication (Tr. 46). The VE testified that all work would be eliminated if

Plaintiff was moderately limited in the ability to do simple, repetitive tasks (Tr. 46). In response

to questioning from Plaintiff's attorney, the VE testified that Plaintiff could miss work 1-2

times monthly at the unskilled work level (Tr. 47).

### C.      *Plaintiff's Claims of Error*

Plaintiff's overarching argument on appeal is that the ALJ's decision is not supported by

substantial evidence.  Within this broad argument, Plaintiff brings several specific challenges to

the ALJ's decision, namely: (1) that the ALJ made an improper credibility determination; (2) that

the ALJ failed to properly account for Plaintiff's obesity; (3) that the ALJ improperly assessed

Plaintiff's mental RFC; (4) that the ALJ erred in not recognizing Plaintiff's depression and

bipolar disorder as "severe" impairments at step two of the disability analysis; and (5) that the ALJ wrongfully relied on flawed VE testimony.

## III.   DISCUSSION

### A.   *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *See Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *See Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v.*

*Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing

the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citations omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x. 521, 526 (6th Cir. 2006).

### B.       *Governing Law*

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. *See* F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

-11-

> inability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial
> gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or
> combination of impairments, that "significantly limits...physical or
> mental ability to do basic work activities," benefits are denied
> without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful
> activity, has a severe impairment that is expected to last for at least
> twelve months, and the severe impairment meets or equals one of
> the impairments listed in the regulations, the claimant is
> conclusively presumed to be disabled regardless of age, education
> or work experience.
>
> Step Four:  If the claimant is able to perform his or her past
> relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past
> relevant work, if other work exists in the national economy that the
> claimant can perform, in view of his or her age, education, and
> work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§

404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding

at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of

limitations caused by his impairments and the fact that he is precluded from performing his past

relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the

analysis reaches the fifth step without a finding that the claimant is disabled, the burden shifts to

the Commissioner.  *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At

the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist

in the national economy that [claimant] could perform given [his] RFC and considering relevant

vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C.    *Analysis*

As noted earlier, Plaintiff raises several challenges to the ALJ's decision.  This Court

finds that the ALJ erred in the following ways, necessitating a remand for a new hearing:

### 1.      The ALJ Erred in Evaluating Plaintiff's Credibility

This Court first finds that the ALJ's credibility analysis is not supported by substantial

evidence.  An ALJ has a duty to provide a rational, non-conclusory explanation for his credibility

analysis.  In particular, Social Security Ruling ("S.S.R.") 96-7p provides, in pertinent part,

> It is not sufficient for the adjudicator to make a single, conclusory
> statement that "the individual's allegations have been considered"
> or that "the allegations are (or are not) credible."  It is also not
> enough for the adjudicator simply to recite the factors that are
> described in the regulations for evaluating symptoms.  The
> determination or decision must contain specific reasons for the
> finding on credibility, supported by the evidence in the case record,
> and must be sufficiently specific to make clear to the individual
> and to any subsequent reviewers the weight the adjudicator gave to
> the individual's statements and the reasons for that weight.

1996 WL 374186, at *2; *see also Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 732 (N.D.

Ohio 2005) ("Regardless of whether harmless error can excuse inadequate articulation of

credibility decisions, the strong statement from [S.S.R. 96-7p] constitutes a clear directive to pay

as much attention to giving reasons for discounting claimant credibility as must be given to

reasons for not fully accepting the opinions of treating sources").[1]

S.S.R. 96-7p's explanatory requirement does not require an ALJ to explicitly discuss each

of the credibility-weighing factors identified in 20 C.F.R. § 404.1529(c)(3).  *See Bowman v.

Chater*, 132 F.3d 32 (table), 1997 WL 764419, at *4 (6th Cir. 1997) ("While this court applied

each of [the § 404.1529(c)(3)] factors in [*Felisky v. Bowen*, 35 F.3d 1027, 1039-1040 (6th Cir.

1994)] we did not mandate that the ALJ undergo such an extensive analysis in every decision.").

And, this Court is well aware of the deference owed an ALJ's credibility determinations.[2]  But,

as the Sixth Circuit has explained,

> [Under Social Security Ruling 96-7p,] blanket assertions that the
> claimant is not believable will not pass muster, *nor will
> explanations as to credibility which are not consistent with the
> entire record and the weight of the relevant evidence.* . . . [W]hile
> credibility determinations regarding subjective complaints rest with
> the ALJ, those determinations must be reasonable and supported by
> substantial evidence.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248-49 (6th Cir. 2007) (emphasis added); *see also*

*Bolden v. Comm'r of Soc. Sec.*, No. 03-cv-74136, 2005 WL 1871121, at *8 (E.D. Mich. Aug. 8,

2005) *report adopted by Bolden*, No. 03-cv-74136 (E.D. Mich. July 13, 2005) (explaining that

---

[1]  SSRs "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency.  20 C.F.R. § 402.35(b)(1); *see also Evans v. Comm'r of Soc. Sec.*, 320 Fed. App'x 593, 596, 2009 WL 784273, at *2 (9th Cir. Mar. 25, 2009) ("'Federal statutes, administrative regulations and Social Security Rulings together form a comprehensive scheme of legal standards that ALJs must follow in determining whether a claimant is entitled to disability benefits.'" (quoting *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990)).

[2]  Heightened deference to an ALJ's credibility determination is based on the general rule that ALJ factual findings are reviewed for substantial evidence and the more specific rationale that the ALJ is able to evaluate a testifying witness's demeanor while this Court cannot.  But the Court does not understand this deference to mean that the ALJ need not provide reasons for discounting a Plaintiff's credibility that are supported by substantial evidence – indeed, this would render much of S.S.R. 96-7p surplusage.  Rather, special deference is owed to the ALJ's credibility determination when the ALJ follows the correct process for reaching that determination.

under S.S.R. 96-7p, "the ALJ's decision must be based on specific reasons for the findings of credibility. *These reasons must be supported by substantial evidence in the record*." (emphasis added)).

Here, the Court cannot say that the reasons the ALJ gave for discounting Plaintiff's testimony are supported by substantial evidence. In evaluating Plaintiff's credibility, aside from using standardized language (*see* Tr. 59), the ALJ provided:

> However, with some benefit of the doubt, [Plaintiff's] subjective complaints are credited to the extent that he has been limited to no more than sedentary level exertion, as indicated above. Further, his subjective complaints are credited to the extent that he has otherwise had significant nonexertional limitations.

This discussion does not meet the explanatory requirement of SSR 96-7p. Thus, at a minimum, this matter must be remanded so that the ALJ can conduct a more complete credibility analysis.

Furthermore, the ALJ seemed to credit the assessment from the State Agency physician – Dr. Blanchard – which concluded that Plaintiff could perform "medium" level work. However, Dr. Blanchard also fully credited Plaintiff's complaints of disabling pain (Tr. 233). It was improper for the ALJ to rely on the assessment of Dr. Blanchard only partially and then conclude that Plaintiff was not credible when Dr. Blanchard explicitly found that Plaintiff's complaints of pain *were* fully credible. In any event, the ALJ's credibility determination was flawed, necessitating remand.

### 2.    The ALJ Failed To Discuss The Effects Of Plaintiff's Weight

The Court also finds that the ALJ did not perform an individualized assessment of the impact of Plaintiff's obesity. Although obesity was deleted from the Listing of Impairments in 20 C.F.R., subpart P, Appendix 1, the Commissioner should still address the issue:

> [E]ven though we deleted listing 9.09, we made some changes to the listings to ensure that obesity is still addressed in our listings. In the final rule, we added paragraphs to the prefaces of the

musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. See listings sections 1.00Q, 3.00I, and 4.00F. The paragraphs state that we consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

SSR 02-01p.

The medical records contain numerous references to Plaintiff's obesity – the ALJ himself noted (Tr. 57) that Plaintiff weighed 312 pounds at a height of 72 inches (6'0").[3]  The ALJ recognized Plaintiff's obesity as a severe impairment at step two of the disability analysis, however, the ALJ did not thereafter mention SSR 02-01p in his decision or give any meaningful discussion of the effect of Plaintiff's obesity, as required by SSR 02-01p.  Indeed, when questioning the VE, the ALJ failed to mention Plaintiff's obesity in any of the numerous hypothetical questions posed. More specifically, the controlling hypothetical had no mention to Plaintiff's obesity – "[a]ssume for hypothetical 4A, that [Plaintiff] is going to be moderately limited in overhead reach with the right dominant feature, moderately being three hours or less per shift...?" (Tr. 46).  The ALJ's decision should have addressed the manner in which Plaintiff's weight affected his ability to work more explicitly.

Accordingly, this matter must be remanded pursuant to sentence four of 42 U.S.C. § 405(g) to re-evaluate the impact of Plaintiff's obesity on his ability to work.  *See* SSR 02-1p,

---

[3]     These measurements suggest that Plaintiff had a body mass index (BMI) around 42.3.  *See* http://www.nhlbisupport.com/bmi/  A BMI over 30 indicates that a person is "obese."  *See id.*

-16-

2000 WL 628049, at *6; *see also, Nejat v. Comm'r of Soc. Sec.*, 359 Fed. App'x 574, 577 (6th

Cir. 2009) (explaining that while "Social Security Ruling 02-01p does not mandate a particular

mode of analysis" regarding obesity, it "directs an ALJ to consider the claimant's obesity, in

combination with other impairments, at all stages of the sequential evaluation."); *Besecker v.*

*Astrue*, No. 3:07CV0310, 2008 WL 4000911, at *5-6 (S.D. Ohio Aug. 29, 2008) ("The repeated

references to Plaintiff's obesity in the record, including the opinions of several medical sources,

should have alerted the ALJ to consider Plaintiff's obesity and its combined impact with his

other impairments at Steps 2, 3 and 4 of the sequential evaluation").

## III.   CONCLUSION

Based on the foregoing, Plaintiff's motion for summary judgment is **GRANTED**,

Defendant's motion for summary judgment is **DENIED** and, pursuant to sentence four of 42

U.S.C. § 405(g), the decision of the Commissioner is **REMANDED** for a new hearing consistent

with the discussion above.

**IT IS SO ORDERED.**

s/Mark A. Randon_____
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: August 22, 2012

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date,*
*August 22, 2012 by electronic and/or ordinary mail.*

s/Melody Miles_____
*Case Manager to Magistrate Judge Mark A. Randon*
(313) 234-5540